IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DAVID S. HANSEN | ) | |
| and MILDRED R. HANSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 120595N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal from Defendant's conference decision, dated March 28, 2012, disallowing certain business and personal deductions for the 2007 tax year. A trial was held in the Tax Courtroom in Salem, Oregon on January 30, 2013. Greg Ripke (Ripke), Certified Public Accountant, appeared and testified on behalf of Plaintiffs. Plaintiffs did not appear at trial. Dane Palmer (Palmer), Tax Auditor, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 23 and 25 through 42 were received over Defendant's objection.[1] Defendant's Exhibits A through H were received without objection.

Similar issues to those presented in this matter have been heard by this court in two previous appeals, involving the 2005 and 2006 tax years. *Hansen v. Dept. of Rev.*, TC-MD No 081122D (Sept 29, 2009); *Hansen v. Dept. of Rev.*, TC-MD No 101043C (July 24, 2012). Those decisions describe the adult foster care business operated by Plaintiffs. The parties declined to

---

[1] Defendant objected to Plaintiffs' Exhibits under Tax Court Rule-Magistrate Division (TCR-MD) 10 C. Under TCR-MD 10 C, exhibits "must be either postmarked at least 14 days before the trial date or physically received at least 10 days before the trial date. * * * In the event that the tenth day falls on a holiday or weekend, the next business day following the holiday or weekend will be considered the tenth day." The tenth day before trial in this matter fell on Sunday, January 20, 2013. The following day, Monday, January 21, 2013, was a holiday. Thus, Plaintiffs' exhibits should have been received by Defendant no later than January 22, 2013. Plaintiffs provided a certificate of service stating that the exhibits were hand-delivered to Defendant on January 22, 2013, and Defendant confirmed receipt of Plaintiffs' exhibits on January 22, 2013. Plaintiffs' exhibits were timely under TCR-MD 10 C.

DECISION  TC-MD 120595N                                                                                      1

submit stipulated facts prior to trial or to stipulate to any of the findings of this court for prior tax years.

## I. STATEMENT OF FACTS

For the 2007 tax year, Plaintiffs' claim certain business deductions and personal medical expenses identified in their Amended Complaint. (Ptfs' Ex 2 at 7-8.) The business expenses claimed pertain to Plaintiffs' "adult foster care business," operated out of a property located near Eugene, Oregon. (*See* Ptfs' Ex 1 at 1.) Plaintiffs also reside at that property. (*Id.*) The parties agree that Plaintiffs provided services to at least five individuals in their adult foster care business. (*Id.*) The Department of Revenue conference officer found that an additional person who lives at the property, "Sue," was a renter and did not receive services from the adult foster care business. (*Id.* at 1, 5.) Ripke disagreed with the conference officer's finding that "Sue" was not a client of the adult foster care business, but offered no reliable evidence in support of his testimony. At trial, the parties also disputed whether Plaintiffs' adult son lived with Plaintiffs in 2007. Ripke testified that Plaintiffs did not claim their son as a dependent in 2007, but conceded that he lacks personal knowledge of whether Plaintiffs' son lived in their home in 2007. (*See* Ptfs' Ex 2 at 4.) Palmer testified that he visited Plaintiffs' home in 2008 and found that Plaintiffs' son lived there at that time.

Ripke's presentation at trial focused primarily on the "general ledger," which he testified was prepared by Plaintiffs for the 2007 tax year. (Ptfs' Exs 6, 7.) Ripke testified that the 2007 general ledger prepared by Plaintiffs was found to include some errors. As a result, Ripke testified that he completed "due diligence" during the pendency of this appeal and reviewed the accuracy of Plaintiffs' general ledger by sampling receipts provided by Plaintiffs. (Ptfs' Ex 41 (receipts).) Ripke conceded that Plaintiffs made some errors in their general ledger, such as

including cash back as business expenses, but testified that he found Plaintiffs' general ledger to be overall accurate and reliable. Ripke testified that the expenses requested in Plaintiffs' Amended Complaint reflect the correction of errors made in the general ledger. (*See* Ptfs' Exs 2, 6, 7, 8.) For instance, Ripke testified that Plaintiffs originally claimed expenses of $41,578 for "Meals & Household Supplies"; Ripke later determined the deduction should be $37,565. (Ptfs' Compl at 8; Ptfs' Ex 2 at 7.)

In addition to the general ledger, Plaintiffs provided 246 pages of photocopied receipts from 2007 and checking account statements from 2007 for "Hansen's 3R Ranch." (Ptfs' Exs 20, 41.) Both are organized somewhat chronologically, without any apparent organization by expense category. According to Ripke, the deductible business expenses were entered by Plaintiffs into their general ledger. (Ptfs' Ex 7.) He testified that Plaintiffs organized expenses into numerous categories, as set out in Plaintiffs' Amended Complaint. (*See* Ptfs' Ex 2 at 7.) Ripke acknowledged that, given the nature of Plaintiffs' business, expenses "that might seem to be personal could fall into the category of services. For example, they might purchase diapers, ibuprofen, flowers, items that normally would fall into the personal category but, in [his], and taxpayer's opinion, are for the comfort and care of their customers." (Ptfs' Ex 8 at 3.)

In order to achieve an appropriate allocation of expenses between the categories of business and personal, Ripke testified that he applied a percentage to each expense category. (Ptfs' Ex 8 at 3; Ex 2 at 7.) Ripke determined that 75 percent of expenses for "meals and household supplies [should] be allowed as a business deduction in the amount of $28,174, based on a ratio of six customers to eight total residents (75%) times $37,565." (Ptfs' Ex 2 at 7.) He determined that 89.94 percent of expenses for mortgage interest, property tax, property insurance, repair and maintenance, and utilities should "be allowed as a business deduction in the

amount of $47,013, based on the ratio of exclusive use by taxpayers of floor space of the residence to the total floor space of the residence 89.94% times $52,272." (*Id.*) Palmer testified in response that Defendant allowed a deduction for mortgage interest and property taxes on Plaintiffs' Schedule A and it is not appropriate to allow a second deduction for those expenses on Plaintiffs' Schedule C. (*See* Def's Ex D at 5.)

Plaintiffs request that the following business expenses be allowed for 2007:

| Expense | Plaintiffs' request |
|---|---|
| Advertising | $427 |
| Auto | $9,013 |
| Depreciation | $11,675 |
| Office & Legal | $1,372 |
| Auto interest | $866 |
| Supplies | $1,683 |
| Taxes, Dues, Licenses | $524 |
| Meals & Household Supplies | $37,565 |
| Telephone | $4,580 |
| Crafts | $256 |
| Comfort Dogs | $1,000 |
| Bank Fees | $79 |
| Cleaning | $910 |
| Outside Service | $300 |
| Mortgage Interest | $33,282 |
| Property Tax | $2,469 |
| Property Insurance | $1,217 |
| Repair and Maintenance | $8,051 |
| Utilities | $7,253 |
| Accounting | $380 |
| Referrals | $2,632 |

(Ptfs' Ex 2 at 7.)

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiffs also request that the following medical expense be allowed for 2007:

| Expense | Plaintiffs' request |
|---|---|
| Office calls | $2,970 |
| Medical insurance | $1,359 |
| Medical insurance | $655 |
| Office calls | $94 |
| Laboratory fees | $59 |
| Prescriptions | $2,449 |

(Ptfs' Ex 2 at 8.)

Palmer testified that he reviewed Plaintiffs' general ledger and the receipts provided by Plaintiffs and found the ledger to be unreliable based on the receipts provided. (*See* Def's Ex E at 4-5; Ex G.) Palmer testified that he reviewed four months of claimed food expenses: February, September, October, and November 2007. (Def's Ex E at 5; Ex G.) For February 2007, he identified receipts supporting food expenses of $695.89, whereas Plaintiffs claimed food expenses of $1,904.76. (Def's Ex E at 5; Ex G at 2.) For September 2007, Palmer identified receipts supporting food expenses of $879.57, whereas Plaintiffs claimed food expenses of $3,468.49. (Def's Ex E at 5; Ex G at 51.) For October 2007, Palmer identified receipts supporting food expenses of $612.55, whereas Plaintiffs claimed food expenses of $5,584.21. (Def's Ex E at 5; Ex G at 106.) For November 2007, Palmer identified receipts supporting food expenses of $863.42, whereas Plaintiffs claimed food expenses of $4,276.40. (Def's Ex E at 5; Ex G at 183.) The Department of Revenue conference officer found that, based on Palmer's review of Plaintiffs' receipts, 20 percent of the food expenses claimed by Plaintiffs were substantiated by receipts. (Def's Ex E at 5.) Using that percentage and a business

/ / /

/ / /

/ / /

allocation of 55.5 percent based on the ratio of business residents (five) to non-business residents (nine), the conference officer allowed a food expense of $4,373.[2] (*Id.* at 7-8.)

The Department of Revenue's conference officer allowed Plaintiffs depreciation of $11,435. (Def's Ex E at 8.) The conference officer's changes "lower[ed] the self-employment tax" and the "substantial underpayment of income (SUI) penalty." (*Id.*)

## II. ANALYSIS

"The Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified by Oregon law." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 *6 (Sept 23, 2005) (citing ORS 316.007)."[3] The legislature adopted, by reference, the federal definition for deductions, including those allowed under Internal Revenue Code (IRC) section 162.[4] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" To be "ordinary," the transaction that gives rise to the expense must be of a common or frequent occurrence in the type of business involved. *Deputy v. Du Pont,* 308 US 488, 495, 60 S Ct 363, 84 L Ed 416 (1940) (citing *Welch v. Helvering (Welch)*, 290 US 111, 114, 54 S Ct 8, 78 L Ed 212 (1933)). A "necessary" expense is one that is "appropriate and helpful" to the taxpayer's business. *See Welch* at 113. As a general rule, IRC section 262(a) prohibits the deduction of most personal and family expenditures.

---

[2] The conference officer found that 20 percent of Plaintiffs' claimed food expenses ($39,401) was $7,880. (Def's Ex E at 8.) The conference officer then multiplied the substantiated food expenses of $7,880 by the business allocation of 55.5 percent for a business food expense of $4,373. (*Id.*)

[3] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2005.

[4] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2007.

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 11 L Ed 2d 226 (1992). *See also* ORS 305.427 (the burden of proof in the Oregon Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief).

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r* (*Cohan*), 39 F2d 540, 543-44 (2d Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985). In *Tyson Foods, Inc. v. Comm'r*, 94 TCM (CCH) 56, 58, WL 2043858 at *3 (2007), the taxpayer provided "evidence that certain payments were made and recorded[,]" and, based on that evidence, asked the court "to conclude that the payments must have been either for deductible expenses or depreciable assets and that the expenditures that were made are attributable to a tax year before the Court." The only other evidence the taxpayer offered "was the list of vendors and amounts that were recorded in the moving expenses account and the testimony of * * * a lawyer involved * * * who had reviewed the document * * *." *Id.* at *4. The court found that the taxpayer "failed to satisfy its burden of proving that it is entitled to the disputed deductions." *Id.*

IRC section 274 supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and any listed property under IRC section 280F(d)(4)(A)(i). *See* Treas Reg 1.274-5T(a). Listed property includes "any passenger automobile" and "any cellular telephone." IRC section 280F(d)(4)(A)(i), (v). Under IRC section 274(d), a taxpayer must substantiate a claimed expense covered by section 274 with adequate records or by sufficient evidence corroborating the taxpayer's own statement

establishing the amount, time, place, and business purpose of the expense. *See* Treas Reg

1.274-5T(b).

IRC section 280A(c)(4) applies to Plaintiffs' claimed business expenses associated with

their home because Plaintiffs operate a licensed residential care facility out of their home.

IRC § 280A(c)(4)(A).[5] The deduction for expenses allowed under IRC section 280A(c) may not

exceed the gross income from the care facility. *See* IRC § 280A(c)(5). Under IRC section

280A(c)(4)(A), Plaintiffs' business use of the home need not be "exclusive," only "regular."

IRC section 280A(c)(4)(C) provides the allocation formula for business expenses associated with

Plaintiffs' home that do not exclusively benefit Plaintiffs' business:

> "If a portion of the taxpayer's dwelling unit used for the purposes
> described in subparagraph (A) is not used exclusively for those purposes, the
> amount of the expenses attributable to that portion shall not exceed an amount
> which bears the same ratio to the total amount of the items allocable to such
> portion as the number of hours the portion is used for such purposes bears to the
> number of hours the portion is available for use."

IRC section 280A is a limit on "deduction[s] otherwise allowable." IRC § 280A(a). Thus,

claimed expenses must be deductible under another code provision authorizing deductions, such

as IRC section 162.

Ripke argued at trial that Plaintiffs' general ledger is reliable and supports Plaintiffs'

claimed business deductions. He expressed the opinion that Plaintiffs' general ledger constitutes

Plaintiffs' "testimony" and proves the business purpose of each claimed expense. The court

disagrees that Plaintiffs' general ledger is their testimony before this court. Plaintiffs did not

appear at trial and testify under oath. Defendant did not have an opportunity to cross-examine

Plaintiffs. The court received no testimony from Plaintiffs. Palmer testified that, based on his

---

[5] IRC section 280A(c)(4)(A) applies to taxpayers who use a portion of their dwelling on a regular basis to carry on the "trade or business of providing day care to children, for individuals who have attained age 65, or for individuals who are physically or mentally incapable of caring for themselves."

review of the food expenses claimed in the general ledger as compared with receipts provided by Plaintiffs, the ledger is unreliable and includes numerous personal expenses that are not deductible business expenses. The court also reviewed Plaintiffs' general ledger and the receipts provided and agrees with Palmer that the general ledger, by itself, is not reliable evidence of Plaintiffs' claimed deductions. Although Plaintiffs provided 246 pages of photocopied receipts, Plaintiffs failed to provide receipts, invoices, or other substantiation for many of their claimed expenses and failed to appear and testify at trial regarding their claimed expenses.

Ripke testified, to the extent of his personal knowledge, regarding Plaintiffs' business and claimed expenses. Unfortunately, Ripke lacked personal knowledge about numerous aspects of Plaintiffs' business and claimed expenses. For instance, Ripke lacked "personal knowledge" of whether Plaintiffs own one car or two; of whether Plaintiffs' son lived with them in 2007; and of whether the "comfort dogs" are licensed or otherwise certified. When questioned, he could not explain why the expense category for "TV" included payments to "GE Money Bank" or why receipts provided to substantiate claimed "food and household expenses" included items such as personal clothing (jackets, shirts, and socks) as well as posters, cat food, and hunting equipment. (*See* Def's Ex G at 1, 2, 49, 51, 55, 67.) Ripke's lack of personal knowledge with respect to the business expenses claimed by Plaintiffs underscores the necessity that those who possess personal knowledge (Plaintiffs) appear and testify at trial. Absent the testimony of Plaintiffs and given the many problems evident in the general ledger provided, the court cannot determine whether many of the claimed expenses were ordinary and necessary business expenses.

Plaintiffs provided statements from the "Hansen's 3R Ranch" checking account from 2007. Ripke argued that, under Rev Proc 92-71, 1992-2 CB 437 (Rev Proc 92-71), bank statements are substantiation of claimed expenses. (*See* Ptfs' Ex 21 at 2.) Rev Proc 92-71 states:

"An account statement prepared by a financial institution showing an electronic funds transfer (*i.e.* a decrease to the account holder's balance) will be accepted *as proof of payment* if the statement shows: 1. the amount of the transfer, 2. the date the transfer was posted to the account by the financial institution, and 3. the name of the payee."

(*Id.* at 2-3 (emphasis added).)  It further states:

"Proof of payment of an amount alone does not establish that a person is entitled to a tax deduction.  A taxpayer should also keep any other documents that may help prove entitlement to a tax deduction (for example, receipts, sales slips, charge slips, payment acknowledgements, check registers, and carbon copies of checks)."

(*Id.* at 3-4.)  Although Plaintiffs' checking account statements establish proof of payment, they do not necessarily establish the business purpose of claimed expenses.

Keeping those limitations in mind, the court considers those expenses for which Plaintiffs have provided some substantiation and for which the business purpose can be discerned.

A.    *Food*

Food was one of the largest expense categories claimed by Plaintiffs for the 2007 tax year.  Plaintiffs' Amended Complaint requests an expense of $37,565 for "Meals & Household Supplies."[6]  (Ptfs' Ex 2 at 7.)  Plaintiffs provided some receipts to substantiate their claimed food expenses.  (*See* Ptfs' Ex 41.)  Palmer testified that he reviewed four months of claimed food expenses and receipts provided by Plaintiffs:  February, September, October, and November.  In his review, Palmer found that many purchases claimed as food included numerous personal items.  Based on Palmer's review, the Department of Revenue conference officer concluded that 20 percent of Plaintiffs' claimed food expenses was substantiated.

The court also reviewed Plaintiffs' receipts as compared with Plaintiffs' claimed food expenses and found Palmer's analysis to be supported.  For instance, in January 2007, Plaintiffs

---

[6] Plaintiffs separately claim expenses of $1,683 for "Supplies."  (Ptfs' Ex 2 at 7.)

reported on their general ledger "groceries" totaling $3,257.51. (Ptfs' Ex 7 at 8.) Of that amount, the court was able to identify 12 receipts totaling $551. (Ptfs' Ex 41 at 1-8; Ex 7 at 8.) Included on those receipts were numerous items that are not "groceries," such as: fish/game licenses; two letter sets; fragrance; cash back; two pairs of thermal pants; leather cleaner; bird food; a road atlas; a hacksaw; hardware; dog food; "counter card"; clothing; cat treats; dog biscuits; and a "system saver."[7] (Ptfs' Ex 41 at 1-8.) Plaintiffs also claimed numerous restaurant meals for no more than one or two people. (*See, e.g., id.* at 28 (TacoTime), 30 ("DQ"), 31 (Quiznos).) It is unclear how those purchases were used in Plaintiffs' business.

Based on the court's review of Plaintiffs' receipts and the persuasive testimony and evidence presented by Palmer, the court agrees with the conference officer's determination that 20 percent of Plaintiffs' claimed food expenses is substantiated. The court finds that Plaintiffs have not provided support for any food expenses beyond what was allowed by Defendant.

B.    *Supplies*

Plaintiffs claimed "supplies" of $1,683. (Ptfs' Ex 2 at 7; Ex 7 at 20.) Included in that amount are several purchases from "All-Med Inc." (Ptfs' Ex 7 at 20.) Plaintiffs provided several invoices from "All-Med Inc." to "Hansen's 3R Ranch" that are dated and describe the purchases in detail: "safety pole - grab bar" and "shower chair/commode." (Ptfs' Ex 41 at 9, 11 (duplicate), 40, 110, 119; Ptfs' Ex 37 at 26, 27.[8]) Those invoices total $1,105.65. (*See id.*) Plaintiffs' checking account statements show payments to "All-Med Inc." totaling $1,269.45 in 2007.[9]

---

[7] Of the $551 in receipts provided by Plaintiffs, the court determined that approximately $264 was not for food, but rather was for various personal items. (*See* Ptfs' Ex 41 at 1-8.)

[8] Plaintiffs' Exhibit 37 was offered as evidence of Plaintiffs' personal medical expenses. The "All Med Inc." invoices are billed to "Hansen's 3R Ranch" and included in Plaintiffs' general ledger; thus, it appears to the court that those invoices were mistakenly included with Plaintiffs' receipts for personal medical expenses. (*See* Ptfs' Ex 7 at 20; Ex 37 at 26-27.) Plaintiffs' Exhibit 37 at 28-29 are duplicates of 26-27.

[9] No explanation was provided for the discrepancy between the invoices and bank statements.

(Ptfs' Ex 20 at 3, 9, 10, 16, 45.)  The court is persuaded that Plaintiffs incurred expenses of $1,106 for supplies used in their adult foster care business.

C.    *Advertising*

Plaintiffs claimed advertising expenses of $427.  (Ptfs' Ex 2 at 7; Ex 7 at 5.)  Plaintiffs provided an "Advertising Agreement" invoice for $298, dated December 10, 2007, from "MLO Media" identifying the "Name of Advertiser" as "Hansen's 3R Ranch." (Ptfs' Ex 9 at 1; Ex 41 at 239.)  The invoice indicates payment was made by VISA card.  (*Id.*)  The court is persuaded that Plaintiffs incurred an expense of $298 for advertising their adult foster care business.

D.    *Utilities*

Plaintiffs' claimed total expenses of $7,253 for "utilities" including "electric," "internet," "trash," and "TV."  (*See* Ptfs' Ex 2 at 7; Ex 7 at 22-23.)

Plaintiffs provided Dish Network statements from 2007 totaling $528.99.  (Ptfs' Ex 41 at 13, 34, 99, 121, 137, 236.)  Plaintiffs provided Lane Electric statements from 2007 totaling $1,145.18.  (*Id.* at 10, 60.)  Plaintiffs' checking account statements from 2007 substantiate payments totaling $204.34 to "Juno Online" for an internet connection.  (Ptfs' Ex 20 at 2, 6, 9, 12, 15, 19, 24, 28, 31, 36, 41, 45.)  Plaintiffs' checking account statements from 2007 substantiate payments totaling $553 for "Trash Bill."[10]  (*Id.* at 2, 6, 9, 12, 15, 19, 24.)  The court finds that Plaintiffs substantiated expenses of $2,432 for utilities.  Plaintiffs' expenses for utilities are mixed personal and business expenses.  Using the 55.5 percent business use allocation determined by Defendant, Plaintiffs are allowed a deduction of $1,350 for utilities.

/ / /

---

[10] Plaintiffs' checking account statements from 2007 consistently include a "Trash Bill" of $79.00 mid-month from January through July 2007.  After July 2007, the checking accounts statements do not include any payments for "Trash Bill."  No explanation was provided for that discrepancy.

E.    *Mileage*

IRC section 162 allows a taxpayer to deduct transportation expenses incurred in connection with a business. "Only such traveling expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted." Treas Reg section 1.162-2(a). Treasury Regulation section 1.162-2(b)(1) additionally provides that when a taxpayer travels to a destination and while at the destination engages in both business and personal activities, traveling expenses to and from such destination are deductible "only if the trip is related primarily to the taxpayer's trade or business."

IRC section 274(d) imposes strict substantiation requirements for mileage expenses. The Treasury Regulations clarify the "adequate records" requirement of section 274(d):

> "[A] taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * *, and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *. It is not necessary to record information in an account book, diary, log, statement of expense, trip sheet, or similar record which duplicates information reflected on a receipt so long as the account book, etc. and receipt complement each other in an orderly manner."

Treas Reg § 1.274-5T(c)(2)(i). "Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction 'of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement' to the level of credibility of a contemporaneous record." *Christine v. Commissioner*, TCM 2010-144, WL 2640125 at *3 (2010), citing Treas Reg §1.274-5T(c)(1).[11]

---

[11] Treas Reg § 1.274-5T(c)(1) states: "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not [made] at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence."

Ripke testified that Plaintiffs claimed an "auto" deduction of $9,013 based, in part, on their "mileage log." (Ptfs' Ex 2 at 7.) Plaintiffs claimed 8,900 miles for business purposes out of a total of 11,300 miles traveled in 2007. (Ptfs' Ex 10 at 33.) Ripke testified that Plaintiffs determined their 2007 mileage based on round trips from Veneta to Eugene to purchase items at the store. He testified that Plaintiffs identified those trips using their bank statements, receipts, and general ledger. (*See* Ptfs' Ex 10 at 10-31 (Ripke testified this is the "source document" from which 2007 mileage was determined).)

Plaintiffs' mileage records do not meet the requirements of IRC section 274(d). One of the problems with Plaintiffs' approach is that it is unclear which trips were exclusively or primarily personal in nature. Plaintiffs' receipts reveal that many of the items purchased and claimed as "food" were personal in nature and lacked any apparent business purpose. Plaintiffs' trips to the store to buy personal items, or mostly personal items, were not deductible business trips. Plaintiffs have failed to meet the burden of proof with respect to claimed "auto" expenses.

F.      *Repairs and maintenance*

Ripke testified that Plaintiffs spent $28,787.63 in 2007 on "repair and maintenance." (Ptfs' Ex 7 at 4.) He testified that expense was mostly to build an addition on the house and it was capitalized, although some of it could have been for repairs. On their Amended Complaint, Plaintiffs claimed expenses of $8,051 for "repair and maintenance." (Ptfs' Ex 2 at 7.) Plaintiffs provided some receipts from hardware stores, home improvement stores, and similar vendors. (*See* Ptfs' Ex 41 at 4, 5, 14 (quote only), 26, 34, 35, 36, 42, 54.) Some invoices are for "Hansen Bros Construction Co." (*Id.* at 12, 86, 98, 103, 122, 136.) The court cannot discern from Plaintiffs' evidence the purpose of those expenses, nor can the court determine whether the expenses were for repair and maintenance or were capital expenditures. Furthermore, it is

unclear to the court whether Plaintiffs' claimed expenses for "repair and maintenance" were for their adult foster care business, for another business (*i.e.* Hansen Bros Construction Co.), or for personal use. Plaintiffs have failed to meet their burden of proof with respect to their claimed expenses for "repair and maintenance."

G.    *Other claimed business expenses*

Plaintiffs claimed "telephone" expenses of $4,580. (Ptfs' Ex 2 at 7.) Ripke testified that Plaintiffs' claimed telephone expenses include their cellular telephone, but conceded that Plaintiffs did not maintain a log detailing business use of their cellular telephone. Plaintiffs provided no other substantiation for their claimed telephone expenses. Plaintiffs failed to meet their burden of proof with respect to their claimed telephone expenses.

Plaintiffs claimed expenses for "crafts" ($256) and "comfort dogs" ($1,000). (Ptfs' Ex 2 at 7.) The receipts provided by Plaintiffs include receipts from quilting and fabric stores as well as pet-related receipts. (*See, e.g.,* Ptfs' Ex 41 at 18, 20, 157 (Jo-Ann Fabric, Sunshine Quilting, Veneta Veterinary Hopsital).) Ripke testified that the "comfort dogs" are Collies and they provide comfort to Plaintiffs' elderly residents. He testified that he does not know whether the dogs are licensed or certified as "comfort dogs." Ripke testified that Plaintiffs claimed dog expenses for dog food, veterinarian visits, and other similar expenses. Palmer testified that, in his view, the dog-related expenses are personal in nature. Plaintiffs provided no explanation for the business purpose of the claimed "crafts" expenses. Plaintiffs failed to meet their burden of proof with respect to their claimed expenses for "crafts" and "comfort dogs."

The court found no substantiation in Plaintiffs' exhibits for the remaining business expenses claimed by Plaintiffs. (*See* Ptfs' Ex 2 at 7.) The court has described in detail the nature of receipts and records provided by Plaintiffs. Other receipts provided by Plaintiffs include

various retail purchases and it is unclear whether any of those purchases were used in Plaintiffs' business. (*See, e.g.,* Ptfs' Ex 41 at 1 (ski shop), 55 (Target), 83 (Powers Sporting Goods), 188 (REI), 205 (Old Navy).) The court finds that Plaintiffs have not established by a preponderance of the evidence any additional business expense deductions for tax year 2007.

H.     *Personal medical expenses*

IRC section 213 allows an itemized deduction for medical expenses paid or incurred by the taxpayer for care of the taxpayer. The deduction is allowed "to the extent that such expenses exceed 7.5 percent of adjusted gross income." IRC § 213(a). Medical expenses are defined as expenditures for the diagnosis, cure, relief, or treatment of disease of bodily malfunction, for medical insurance, for prescription drugs, and for transportation and lodging while seeking care. IRC § 213(d)(1)(A)-(D). "The term 'medical care' does not include cosmetic surgery or other similar procedures, unless the surgery or procedure is necessary to ameliorate a deformity arising from, or directly related to, a congenital abnormality, a personal injury resulting from an accident or trauma, or disfiguring disease."[12] IRC § 213(d)(9)(A).

Plaintiffs claimed personal medical expenses totaling $7,586. (Ptfs' Ex 2 at 8.) Plaintiffs' second amended 2007 income tax return reports adjusted gross income of $86,714. (Def's Ex C at 6.) Plaintiffs provided invoices and receipts supporting some of their claimed medical expenses. (*See* Ptfs' Ex 37.) Some of the medical receipts and invoices provided are clearly not Plaintiffs' personal medical expenses, but rather appear to be receipts for prescription drugs belonging to patrons of Plaintiffs' adult foster care business. (*See, e.g., id.* at 7-8.[13]) Many

---

[12] "Cosmetic surgery" is "any procedure which is directed at improving the patient's appearance and does not meaningfully promote the proper function of the body or prevent or treat illness or disease." IRC § 213(d)(9)(B).

[13] Some receipts for prescription drugs included in Plaintiffs' personal medical receipts name individuals who are identified as patrons of Plaintiffs' adult foster care business on their general ledger. (*See* Ptfs' Ex 7 at 1.)

of the receipts provided by Plaintiffs are from "Tiffany's Drugs"[14] and do not clearly identify the item purchased. (*See, e.g., id.* at 10.) Some receipts provided are illegible. (*See, e.g., id.* at 18-20.) Plaintiffs' provided a January 5, 2007, invoice for $1,500 for "Botox" and "Restylane." (*Id.* at 22.) Plaintiffs offered no evidence whether payments for "Botox" and "Restylane" are deductible medical expenses under IRC section 213. Based on the evidence provided, Plaintiffs have substantiated no more than $3,042 in medical expenses. That amount does not meet the threshold of 7.5 percent of adjusted gross income. IRC § 213(a).

I.      *Penalty waiver request*

At the conclusion of trial, Ripke requested waiver of the penalty imposed for substantial understatement of income and provided a letter in support of that request. (Ptfs' Ltr, Jan 30, 2013.) Ripke stated that Plaintiffs had not previously requested that Defendant waive the penalty. Palmer confirmed that Defendant had not received a penalty waiver request from Plaintiffs. ORS 314.402(2)(a) states that a substantial understatement of taxable income exists if the amount of the taxpayer's understatement exceeds $15,000. ORS 314.402(6) grants Defendant the authority to waive all or any part of the penalty on a showing by the taxpayer that there was "reasonable cause for the understatement, or any portion thereof, and that the taxpayer acted in good faith." *See also* OAR 150-314.402(4)(b). Plaintiffs' request that the court waive the substantial understatement of income penalty is denied.

### III. CONCLUSION

After careful review and consideration of the evidence presented, the court finds that Plaintiffs have substantiated some of their claimed business deductions for the 2007 tax year.

---

[14] Many receipts from "Tiffany's Drugs" were also included with Plaintiffs' business receipts. (*See, e.g.,* Ptfs' Ex 41 at 6.) It is unclear whether Plaintiffs deducted those purchases both as business expenses and also as personal medical expenses.

The court further finds that Plaintiffs substantiated some of their claimed personal medical expenses, but the amount substantiated is insufficient for the deduction under IRC section 213(a). The court concludes that Plaintiffs' request for waiver of the substantial understatement of income penalty must be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2007 tax year, Plaintiffs are allowed the following business deductions in addition the deductions allowed by Defendant's conference officer: $1,106 for supplies; $298 for advertising; and $1,350 for utilities.[15]

IT IS FURTHER DECIDED that, for the 2007 tax year, Plaintiffs are not allowed a deduction for personal medical expenses under IRC section 213.

IT IS FURTHER DECIDED that Plaintiffs' request for waiver of the substantial understatement of income penalty is denied.

Dated this ____ day of April 2013 .


ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on April 12, 2013. The Court filed and entered this document on April 12, 2013.*

---

[15] The court finds that Plaintiffs substantiated expenses of $2,432 for utilities. Based on the 55.5 percent business allocation, Plaintiffs are allowed a deduction of $1,350 for utilities.